UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>DAKOTA WRIGHT,<br><br>　　　　Defendant. | 4:16-CR-40083-04-KES<br><br>ORDER DENYING MOTION FOR RELEASE UNDER THE FIRST STEP ACT |

　　　Defendant, Dakota Wright, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 535. Plaintiff, the United States of America, opposes the motion. Docket 539. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

　　　On November 19, 2018, Wright pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 314, 326. On July 22, 2019, the court sentenced Wright to 72 months in custody followed by five years of supervised release. Docket 499; Docket 500 at 2-3. Her projected release date is June 21, 2023. Docket 538 at 435.

　　　Wright is incarcerated at Federal Medical Center Carswell (FMC Carswell), an administrative security medical center with an adjacent minimum-security camp in Fort Worth, Texas. Docket 535 at 1. The total population at FMC Carswell is 1,291 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/crw/ (last visited Feb. 4, 2021). As of February 4, 2021, there are currently 163 active COVID-19 cases among

FMC Carswell's inmates and three among staff, six inmates have died from COVID-19, and 600 inmates have recovered. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Feb. 4, 2021).

Wright is currently 31 years old. Docket 538 at 435. She alleges to suffer from tuberculosis, obesity, asthma, and upper respiratory issues. Docket 535 at 2. As of November 13, 2020, Wright weighed 194 pounds and is 62 inches tall. Docket 543 at 6; Docket 538 at 326. Based on her weight and height, her body mass index (BMI) is 35.5, which exceeds the threshold for obesity at a BMI of 30.0. *See Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/ assessing/bmi/adult_bmi/ english_bmi_calculator/bmi _calculator.html (last visited Feb. 1, 2021). Wright asserts that her health conditions place her at high risk of developing serious complications if she contracts COVID-19. Docket 535 at 9. She further asserts she has changed and made the most of her time in prison. *Id.* at 13. If released, Wright plans to live in Lakeville, Minnesota to be near her children. *Id.* at 13-14.

On May 25, 2020, Wright submitted an Inmate Request to Staff form requesting she be considered for compassionate release due to COVID-19. Docket 538 at 2. She made a second request on August 3, 2020. *Id.* at 1. The warden denied both requests. *Id.* at 3-4. On November 12, 2020, Wright's counsel filed a motion with the court for compassionate release under the First Step Act. Docket 535. On December 9, 2020, the United States responded in opposition to Wright's release. Docket 539. Wright's counsel subsequently filed

2

a reply brief and a supplement to the motion. Dockets 542, 544.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions with the court seeking compassionate release. *Id.* § 603(b)(1). Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statements, which were adopted before the FSA was passed, require both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Wright argues her health conditions and incarceration during the COVID-19 pandemic are "extraordinary and compelling reasons" justifying her release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 535 at 4; Docket 542 at 2-3.

Wright requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. Docket 542 at 3.

I.     **Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Wright submitted two requests for compassionate release due to COVID-19 to the warden, which were denied. The government does not dispute that Wright has satisfied the administrative exhaustion requirement. Docket 539 at 2. Thus, Wright's motion will be reviewed on the merits.

II.    **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," but Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons for release and fashion "the criteria to be applied and a list of specific examples." *Id.* As directed, the

4

Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four scenarios. USSG § 1B1.13, comment. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, comment. n.1(D). The commission's policy statements in § 1B1.13 were adopted before the passage of the FSA.

The Sentencing Commission has lacked a quorum since the FSA was passed and has not updated its policy statements. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, a number of district courts, including this one, have questioned whether the commission's policy statements still apply. *See, e.g., United States v. Rodd*, Criminal No. 13-230, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020); *United States v. Poole*, 4:15-CR-4009-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020).

Because the FSA changed the way a compassionate release motion may

be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Beck*, 425 F. Supp. 3d at 578-80; *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). A fellow court in this district has held that the "court retains its independent authority to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring[.]" *United States v. Magnuson,* 5:15-cr-50059-JLV, 2020 WL 7318109, at *5 (D.S.D. Dec. 11, 2020) (internal quotations omitted). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

It is clear Congress desired to increase the use of compassionate release by allowing defendants to directly petition the court after exhausting administrative remedies. *See* 132 Stat. at 5239. The statute instructs that the court may reduce a term of imprisonment for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This court has assumed the policy statements still apply to compassionate release

6

motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* (8th Cir. Oct. 9, 2020); *United States v. Adame,* 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

Wright contends that the ongoing COVID-19 pandemic in combination with her health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Wright contends her circumstances warrant relief under the medical conditions category, USSG § 1B1.13, Application Note 1(A), and the catch-all provision, USSG § 1B1.13, Application Note 1(D). Docket 535 at 4-13.

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Wright has failed to show that her reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A. Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down syndrome, heart conditions,

7

immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), pregnancy, sickle cell disease, smoking, and type 2 diabetes. *People with Certain Medical Conditions*, Ctrs. Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Dec. 29, 2020). The CDC advises that other medical conditions *might* pose an increased risk of severe illness from COVID-19, including moderate to severe asthma, hypertension or high blood pressure, liver disease, overweight, type 1 diabetes, and several others. *Id.*

The court has reviewed Wright's medical records submitted in this case. Wright's medical conditions include bipolar disorder, asthma, latent tuberculosis infection, chronic and allergic rhinitis,[1] and other minor ailments. Docket 543 at 101-03. Her BMI of 35.5 qualifies Wright as obese. *See id.* at 6. Wright's only condition on the CDC list of those that *do* increase the risk of severe illness is obesity. Her recent records, however, demonstrate that she has been able to lose weight. On January 6, 2021, Wright reported a 12-pound weight loss to her physical therapist. *Id.* at 104. At 182 pounds, Wright's BMI is 33.3. *See* https://www.cdc.gov/healthyweight/ assessing/bmi/adult_bmi/ english_bmi_calculator/bmi _calculator.html (last visited Feb. 1, 2021). The court has held that obesity alone is not an extraordinary and compelling reason warranting compassionate release in the age of the COVID-19

---

[1] Rhinitis refers to as a stuffy or runny nose. *See Nonallergic Rhinitis*, www.mayoclinic.org/diseases-conditions/nonallergic-rhinitis/symptoms-causes/syc-20351229 (last visited Feb. 2, 2021).

pandemic. *See, e.g., Adame,* 2020 WL 7212096 at *4 (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19); *United States v. McAbee,* No. 4:14-CR-40027-01-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons).

Turning to her other conditions, Wright has a confirmed diagnosis of asthma. Asthma is a condition that *might* pose an increased risk if it is moderate to severe, but that is not the case. Wright is prescribed an albuterol inhaler for asthma, which she does not need to use daily. Docket 543 at 110. Nothing in her records indicates she has moderate to severe asthma.

Wright also claims she has tuberculosis, but that overstates her actual condition. Wright was under observation for suspected tuberculosis (TB) from approximately August 30, 2019 to September 13, 2019 at FMC Carswell. Docket 538 at 241-296. Three sputum smear tests on September 4, 5, and 6, 2019 were negative for active TB. *Id.* at 241. Wright's chest x-ray was also negative for evidence of active TB process. *Id.* at 266, 280. During her isolation period, Wright consistently denied cough, fever, and chills to medical providers. *Id.* at 247, 251, 255, 257, 259, 262, 266, 270, and 274. On September 13, 2019, she was assessed with latent tuberculosis infection and released from isolation. *Id.* at 241; *See also* Docket 543 at 101.

The CDC explains that two tuberculosis conditions exist: latent TB infection and TB disease. *See Latent TB Infection and TB Disease*, https://www.cdc.gov/tb/topic/basics/tbinfectionsdisease.html (last visited

Feb. 2, 2021). Latent TB infection occurs when TB bacteria exists in the body without making a person sick. *Id.* The CDC advises that many people who have TB infection never develop TB disease. *Id.* People with active TB disease are sick and may spread the bacteria to others, while people with latent TB infection are not sick and do not spread the bacteria. *Id.*

Latent TB infection is not a condition identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Because this condition can be managed in prison, it is not a sufficient basis for compassionate release. *See Nyuon,* 2020 WL 7029873, at *4 (quoting *United States v. Ayon-Nunez,* 2020 WL 704785, at *3 (E.D. Ca. Feb. 12, 2020)).

In sum, Wright's conditions of obesity, asthma, and latent TB infection do not constitute extraordinary and compelling reasons for release. This court has required a more particularized showing of risk to warrant compassionate release. Additionally, Wright has not identified how these conditions prevent her from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

In a supplemental filing, defense counsel advises that Wright has recently contracted COVID-19 and asserts this is an additional factor warranting compassionate release. Records from FMC Carswell confirm Wright tested positive for the virus on January 21, 2021. Docket 543 at 102. Wright's medical records show she was regularly tested for COVID-19, and the January

10

21, 2021 test appears to have been the result of routine monitoring by FMC Carswell. *See id.* at 107. Wright was noted as asymptomatic at the time of testing. *Id.* There are no records to substantiate that Wright has experienced any symptoms during her course of COVID-19. The court has denied compassionate release under similar circumstances. *See Adame*, 2020 WL 7212096 at *4 (denying compassionate release to defendant with resolved case of mild to moderate COVID-19); *United States v. Brunston*, 4:18-CR-40145-KES, Docket 68 (D.S.D. May 26, 2020) (denying compassionate release after defendant had confirmed case of COVID-19); *United States v. Odie,* 4:17-CR-40016-01-KES, Docket 214 (D.S.D. Jan. 26, 2021) (denying reconsideration of compassionate release for defendant with confirmed case of mild COVID-19).

FMC Carswell is a medical center, and the court believes Wright will receive appropriate care and treatment for COVID-19. Although the court in no way diminishes Wright's health concerns, her medical conditions, coupled with the present conditions at FMC Carswell, do not establish extraordinary and compelling reasons justifying her early release.

### B.   Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, comment. n.1(D). Even after considering the ongoing COVID-19 pandemic combined with Wright's medical conditions and current positive COVID-19 test result, the court is not convinced that

11

extraordinary and compelling reasons exists to release Wright from custody early.

### III.  Sentencing Factors of § 3553(a)

Even were the court to conclude Wright's medical conditions constitute "extraordinary and compelling reasons" warranting a reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of compassionate release.

Wright's conviction stems from a conspiracy to distribute methamphetamine. Docket 500. Wright was involved in a complex distribution chain moving methamphetamine from Texas to Sioux Falls, South Dakota. *See* Docket 490, ¶¶ 9-33. Wright received four ounces of methamphetamine for distribution at least every two days from March 2016 to mid-July 2016. *Id.* ¶¶ 26, 29, 34. More than seven kilograms of methamphetamine were attributable to her conduct. *Id.* ¶¶ 34, 40. Her total offense level was 31 and she had 10 scorable criminal history points placing her in criminal history category V. *Id.* ¶¶ 49, 76. The advisory guideline range for her sentence was 168 to 210 months in custody. *Id.* ¶ 129. Wright's drug trafficking was a serious offense. And, it was not her first.

Wright had a prior state drug offense in 2009 for which she was sentenced to seven years imprisonment with two years suspended. *Id.* ¶ 60. Wright was granted parole in April 2010 that was revoked in November 2012. *Id.* A pattern of parole and revocation occurred several times thereafter. *Id.* She was paroled a final time in November 2015 and discharged in April 2016. *Id.*

12

Wright then became involved in the instant offense shortly after (or possibly before) her discharge from parole. *See id.* ¶ 34.

Wright also has a history of petty theft offenses and numerous convictions for driving-related charges, including eight for driving without a license, four for failing to maintain financial responsibility, and one for driving with suspended license. *Id.* ¶¶ 57-74. The presentence investigation report details more than 20 other citations for similar conduct from 2016 to 2018 that were dismissed. *Id.* ¶ 83. More concerning are the four protection orders that have been issued against Wright for conduct such as threatening physical harm and stalking others. *Id.* ¶¶ 85-88.

The court sentenced Wright to 72 months incarceration based on her history and characteristics, the seriousness of the offense, the need to provide just punishment and adequate deterrence, and the need to protect the public from future offenses committed by Wright. Wright has served approximately 50% of her statutory term. Docket 538 at 436. She is eligible for home detention on December 21, 2022. *Id.* at 435.

Wright's sentence was selected with care after considering the § 3553(a) factors. The court finds that the sentence of 72 months in custody with five years of supervised release continues to be appropriate for the seriousness of the offense to which she pleaded guilty.

## CONCLUSION

Wright has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 535) is denied.

Dated February 4, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE